IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10878
_____


DELBERT BOYD TEAGUE, JR.,

                                          Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

                                          Respondent-Appellee.
_____

Appeal from the United States District Court for the
Northern District of Texas
(4:96-CV-24-Y)
_____
April 30, 1998
Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

     In this death penalty case, Delbert Boyd Teague appeals the

denial of his petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  Finding no error in the denial, we affirm the

decision of the district court.

                              I

     Teague was found guilty of capital murder by a Texas jury on

July 23, 1986.  Viewed in the light most favorable to the verdict,

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the evidence adduced at trial showed the following (as later summarized by the Texas Court of Criminal Appeals):

> [Teague] and his cohort, Robin Partine, robbed [nineteen-year old] Donna Irwin and her date, Tommie Cox, late at night at [Inspiration Point,] a scenic area overlooking Lake Worth in Tarrant County[, Texas]. After [Teague] bound Cox with a rope and left him lying face down on the ground, [Teague] and Partine kidnapped Irwin and left the scene in a truck driven by [Teague]. As they left the area, they passed three young men in a four-wheel drive vehicle going the other way in the direction of where Cox had been left. [Teague] turned the truck around and began to follow the four-wheel drive vehicle. Cox had managed to set himself free, and he approached the four-wheel drive vehicle on foot as it drove toward him. When the four-wheel drive vehicle stopped, Cox told its occupants about what had happened and asked for help. [Teague] suddenly appeared on foot, shot each occupant in the four-wheel drive vehicle at least once in the head, and took their wallets. Cox escaped uninjured. One of the occupants of the four-wheel drive vehicle died from his injuries and another suffered permanent brain damage. The other occupant, James Bell, recovered from his wounds . . . . After the shootings, [Teague] and Partine left the scene in their truck with Irwin. Later that night, they took turns sexually assaulting her. [Teague] and Partine were eventually arrested in Louisiana after Irwin had left a note, saying she had been kidnapped, in a women's restroom at a gas station.

Teague v. State, 864 S.W.2d 505, 508-09 (Tex. Crim. App. 1993).

Following a separate penalty-phase hearing, the jury returned affirmative answers to two special sentencing issues[1] submitted

---

[1]Briefly stated:

(1) Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant . . . that caused the death of the deceased . . . was committed deliberately and with the reasonable expectation that the death of the deceased or

pursuant to Tex. Code Crim. Proc. art. 37.071(b).  Based on the jury's answers, the trial court imposed a sentence of death.

Teague's conviction and sentence were affirmed by the Texas Court of Criminal Appeals.  Teague v. State, 864 S.W.2d at 505. Teague decided to forego an application for writ of certiorari from the United States Supreme Court, and instead filed a petition for state habeas relief.  On May 30, 1995, his petition was denied by the Texas Court of Criminal Appeals in an unpublished order.

III

His state remedies at last exhausted, on January 16, 1996, Teague filed the instant petition for writ of habeas corpus in the United States District Court for the Northern District of Texas, complaining of multitudinous defects in the conduct of his trial and appeal.  On May 20, 1997, Magistrate Judge Bleil issued proposed findings of fact and conclusions of law, and recommended denying relief.

In making his findings, the magistrate judge purported to apply the standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") retroactively to Teague's petition,

---

another would result?

(2) Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant . . . would commit criminal acts of violence that would constitute a continuing threat to society?

relying on the then-current precedent of <u>Drinkard v. Johnson</u>, 97 F.3d 751 (5th Cir. 1996). In general, the AEDPA provides for a much more deferential standard of review of state court proceedings on petition for federal habeas relief than prevailed under prior law. <u>See</u> <u>Williams v. Cain</u>, 125 F.3d 269, 276-77 (5th Cir. 1997).

Subsequent to the magistrate judge's recommendation, but before the district court's ultimate resolution of Teague's petition, the Supreme Court decided the case of <u>Lindh v. Murphy</u>, 117 S.Ct. 2059 (1997). In <u>Lindh</u>, the Supreme Court overruled <u>Drinkard</u> as to retroactive application, and held that the standards of the AEDPA did not apply to habeas petitions, like Teague's, that were filed prior to the statute's effective date of April 24, 1996. <u>Lindh</u>, 117 S.Ct. at 2067.

Recognizing the problem, the district court rejected the magistrate judge's conclusion that the AEDPA applied to Teague's case. Finding sufficient pre-AEDPA support in the magistrate judge's recommendations, however, District Court Judge Means concluded that Teague's petition should nonetheless be denied. Accordingly, an order denying Teague's petition was entered on August 8, 1996, from which final decision Teague appeals.

IV

Teague raises four substantive issues on appeal from the district court's denial of habeas relief, all of which are completely meritless under longstanding Fifth Circuit precedent.

A

As an initial matter, Teague argues that his case should be remanded for a new hearing because the magistrate judge's improper retroactive application of the AEDPA impermissibly tainted all of his findings of fact and conclusions of law.  As a close reading of the magistrate judge's thorough opinion reveals, however, each and every one of Teague's issues was resolved on both pre-AEDPA and post-AEDPA grounds.  No portion of the magistrate judge's ruling was contingent on the AEDPA, and Teague can therefore not succeed as to any issue on this complaint alone.

Furthermore, although the magistrate judge was misled by our ruling in Drinkard as to the AEDPA's applicability to Teague's petition, the district court judge was not.  Any defect that might have crept into the magistrate judge's analysis was therefore cured by the district court judge's reassessment of the issues under the proper standard.  For both of these reasons, the mere fact of the magistrate judge's error in assessing the statute's applicability cannot serve as a basis for relief on appeal, and we may turn to the merits of Teague's substantive issues.

B

Teague first complains that one of the potential jurors at his trial was erroneously excluded for cause even though she did not indicate an inability to perform her functions under the Texas death penalty scheme, just a general objection to the death penalty. The record reveals, however, that this potential juror specifically said that her belief would prevent her from responding to a special issue in a way that would result in the imposition of the death penalty, and that the trial court found her to be excludable for cause on this basis. Under our longstanding precedent, we must accept the state trial court's judgments as to potential jurors' inability to apply state law so long as they are fairly supported by the evidence when viewed as a whole. See Brock v. McCotter, 781 F.2d 1152, 1156 (5th Cir. 1986). Because the juror's statement, viewed in the light of her entire testimony, is manifestly sufficient to justify the trial court's finding under this "fair support" standard, Teague may not obtain relief on this ground.

C

Teague next argues that voir dire was inadequate with respect to three other jurors because the court limited the defense's questioning of their understanding of the difference between the words "deliberate" and "intentional." Both parties agree that the

6

court allowed some questioning on this issue. Under United States v. Greer, 968 F.2d 433, 437 (5th Cir. 1992), it is clear that the only constitutional sufficiency requirement for voir dire is that enough questions be asked to ferret out any bias. Furthermore, in Milton v. Procunier, 744 F.2d 1091, 1095 (5th Cir. 1984), this court specifically held that there was no right to ask jurors about their understanding of the definition of "deliberately," as that term was of common usage. In the light of Milton, Teague's complaint does not raise even a colorable claim of constitutional error, and he may not obtain relief on this basis either.

D

Teague next contends that his appellate counsel was inadequate for failing to raise the just-discussed voir dire problem on direct appeal, citing supposedly dispositive Texas case law on the question of reversible error in the limitation. Regardless of what the Texas courts would have done had this issue been raised on direct appeal, however, under Ricalday v. Procunier, 736 F.2d 203, 207 (5th Cir. 1984), inadequate performance by appellate counsel must be tied to a fundamental unfairness of constitutional proportions in the *trial itself* in order to give rise to federal habeas relief. As the voir dire in this case was constitutionally adequate in the first place, this requirement has not been met, and Teague's petition fails on this point as well.

7

E

Finally, Teague argues that Texas's capital sentencing scheme is unconstitutional under Simmons v. South Carolina, 114 S.Ct. 2187 (1994), because it prevented the jury from learning that he would be ineligible for parole for twenty years if given a life sentence. Teague claims that this information would have been relevant to the jury's analysis of the second special sentencing issue, future dangerousness. In addition to the Teague problems, see Teague v. Lane, 488 U.S. 288, 296 (1989), that Teague encounters in trying to apply Simmons to his conviction (which became final, after all, long before Simmons was decided), this court specifically held in Allridge v. Scott, 41 F.3d 213, 221 (5th Cir. 1994), that Simmons is only applicable to cases where the jurors are denied information about *complete* ineligibility for parole under an alternate life sentence, not mere ineligibility for a limited period of time. Furthermore, as the Supreme Court recently indicated in Brown v. Texas, 118 S.Ct. 355 (1997), informing the jury about a twenty-year minimum on the alternate life sentence would probably be more likely to *harm* a defendant's chances of obtaining a finding of no future dangerousness than to help them. On this claim as well, we therefore find no basis for relief.

V

Delbert Boyd Teague engaged in a vicious crime spree consisting of murder, attempted murder, kidnaping, rape, and robbery, and he neither disputes his guilt nor raises meritorious legal arguments in this appeal. In these circumstances, the federal courts may not interpose themselves between Teague and the punishment that constitutionally has been meted out to him. The judgment of the district court is therefore

A F F I R M E D.